IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:11CR070 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID D. DOWD |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD MICHAEL PERSA, | ) | GOVERNMENT'S RESPONSE TO |
| MATTHEW J. HOLLAND, | ) | DEFENDANT'S MOTION TO SUPPRESS |
| | ) | |
| Defendants. | ) | |

Plaintiff, the United States Government, through its counsel, Steven M. Dettelbach, United States Attorney, and Phillip J. Tripi and Blas E. Serrano, Assistant U.S. Attorneys, responds in opposition to Defendants, Richard Michael Persa's and Matthew J. Holland's Motion to Suppress.

I.    Statement of Facts

On February 15, 2011, a federal Grand Jury returned a five-count indictment charging the crime of Unarmed Bank Robbery, in violation of Title 18, United States Code, Section 2113(a), against Richard Michael Persa (Counts 1 through 5) and Matthew J. Holland (Counts 1 and 3-5). Defendants Persa and Holland in their motion to suppress pending before the Court allege that the statements made to detectives of the Cleveland Police Department on January 13, 2011, and

that items seized from their apartment pursuant to a consensual search are suppressable because such were the product of a warrantless illegal arrest. Furthermore, that a statement given by each defendant to federal agents on the following day (January 14, 2011) are also subject to suppression because the defendants were under the duress of their illegal detention.

It is expected that the evidence to be presented at the hearing on the defendants' motion will establish that on January 13, 2011, at approximately 9:00 a.m., a white male attempted to rob the Subway Restaurant located at 3494 West 25th Street, Cleveland, Ohio, and fled the scene on foot after two of the servers were screaming loudly in fear. Cleveland Police Officers, Gregory Dubray and Michael Billet responded to the scene and obtained information on the attempted robbery from employees of the Subway restaurant on the events and the description of the suspect. The suspect was described as a white male, tall and thin, wearing a puffy hooded coat and a scarf around his face. The only visible parts of his face were his blue eyes and prominent nose, and it was indicated that he spoke with an eastern European accent.

The responding officers received further information that a frequent Subway customer, who had seen the male running out of the restaurant, reported that she observed the male run north on West 25th Street, and then saw him enter an apartment building located in the corner of West 25th Street and Marvin Avenue. The officers proceeded to the apartment building located at 2510 Marvin Avenue, Cleveland, and were admitted into the building by the tenants. Upon interviewing several of the tenants and providing them with a description of the suspect, it was learned that the description matched one of the two males who lived in apartment #2. The officers checked apartment #2 and observed fresh wet marks on the floor outside the door of that apartment. The officers knocked on the door several times, but did not receive a response. An

attempt was made by the officers to contact the building manager without success. Sometime later on the same date, the apartment manager called and provided the names of Matthew Holland and Richard Persa as the tenants of Apartment #2. The manager also indicated that the description of the suspect matched a male that he always saw at Apartment #1, who was the son of one of the other tenants.

On the same date during the early evening, Detectives David Borden and Sgt. Thomas Shoulders of the Cleveland Police Department went to the Marvin Avenue apartment building and knocked on the door of Apartment #2. Michael Holland opened the door and allowed the officers into the apartment. The officers observed that Holland was a short male and thin, in his late twenties and with dark eyes, not matching the description of the suspect. They informed Holland that they were investigating the attempted robbery of the Subway restaurant and inquired whether there was anybody else in the apartment. Holland replied that he was alone, but unintentionally glanced to towards a back bedroom. While the officers were inquiring about who he lived with and other information about his roommate, the officers heard a noise coming from the bedroom. Due to the nature of the crime being investigated and concern for their safety and being ambushed, Sgt. Shoulders proceeded to the back bedroom. Upon entering the bedroom, Sgt. Shoulders observed a male (who later proved to be Richard Persa) laying face down on the floor with the hood of his sweatshirt covering his head, and not responding to Sgt. Shoulders commands to stand up and come out of the bedroom with his hands up.

Sgt. Shoulders shook Persa and he did not respond. Persa was lying face down on his hands. Det. Borden then secured Holland and called for assistance, while Sgt. Shoulders was trying to find out why Persa was unresponsive. Sgt. Shoulders drew his firearm and shook Persa

harder.  Persa then stated, "O.K . . .O. K., you got me."  Sgt. Shoulders then told Persa to show his hands slowly and asked him why he did not respond when asked to come out.  Persa replied, "You know why."  Sgt. Shoulders then informed Persa that he was not under arrest, but that he was going to handcuff him because of the lack of cooperation and safety concerns.  Persa was then taken to the kitchen area and both Persa and Holland were advised of their constitutional rights, which both stated they understood.  A protective sweep for more people was conducted of the apartment with negative results.

    Det. Borden began to interview Persa, while Sgt. Shoulders interviewed Holland.  Persa admitted that he attempted to rob the Subway Restaurant, stating that he did not want to hurt anyone.  During Persa's interview, Sgt. Shoulders went back to the kitchen where Persa was being interviewed and told Persa that he looked like the "Big Nose" bank robber.  Persa smiled and then admitted that, in fact, he robbed several banks in the Cleveland and Parma area.  Persa gave his consent to a search of the apartment.  Several items were seized, including Persa's coat, a gray sweatshirt, a white knit cap, black knit gloves, a cellular telephone, a spiral notebook, and a DVD of the movie "Town."  Both Persa and Holland were arrested and conveyed to city jail, Persa for the attempted robbery of the Subway restaurant and various bank robberies, and Holland for obstruction of justice for hiding a fugitive (Persa) and a Key Bank robbery.

    On January 14, 2011, Special Agent Kerry McCafferty and deputized federal agents TFO Bruce Garner and TFO Daniel Comerford of the Cleveland/Cuyahoga Violent Crimes Task Force interviewed Persa and Holland at the Cleveland Police Jail where they were being held on local charges, after advising them of the Constitutional rights.  Both Persa and Holland signed the Advice of Rights form and stated that they understood their rights.  Neither defendant was

questioned on the Subway attempted robbery. Both defendants admitted to their involvement in the bank robberies charged in the indictment, providing details on each specific bank robbery.

II.     Argument

Persa and Holland argue that Det. Borden and Sgt. Shoulders of the Cleveland Police Department arrested them without a warrant in violation of their Fourth Amendment rights, and consequently, any statements they made to the officers on January 13, 2011 were involuntary. However, the mere fact that both defendants were handcuffed does not mean that they had been placed under arrest. An officer may handcuff a suspect for the officer's protection depending on the circumstances. Persa and Holland were not placed under arrest until the officers knew that they had the person who had committed the attempted robbery of the Subway restaurant (Persa) and bank robberies, and Holland for obstructing justice by hiding or lying of Persa's presence in the apartment. Similarly, Persa and Holland argue that the statements they made on January 14, 2011 to federal agents were the product of an illegal arrest and subject to the exclusionary rule.

Even if Persa and Holland were deemed to be in custody, they were given the *Miranda* rights, which they understood and waived voluntarily when questioned by the Cleveland Police officers, as well as the next day, when questioned by federal agents.

   A.     Reasonable Suspicion of Criminal Activity and Public Safety Exception for Officer's Safety.

There are three types of encounters citizens have with police requiring various levels of awareness by the police of criminal activity to justify them. They are: (1) consensual encounters, which may be initiated without any objective level of suspicion, United States v. Mendenhall, 446 U.S. 544 (1980); United States v. Travis, 62 F.3d 170 (6th Cir. 1995), cert. denied, 516 U.S.

1060 (1996); (2) investigative detentions, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity, Florida v. Royer, 460 U.S. 491 (1983); United States v. Respress, 9 F.3d 483 (6th Cir. 1993); and (3) arrests, which are valid only when supported by probable cause, Illinois v. Gates, 462 U.S. 213 (1983).

In the case at bar, we agree that both defendants were handcuffed (but not arrested). The officers' action was not only supported by articulable reasonable suspicion of criminal activity, but more important, to secure their own safety. In United States v. Jacob, 377 F.3d 573 (6th Cir. 2004), cert. denied, 125 S. Ct. 1358 (2005), the Sixth Circuit held an investigative detention to be reasonable where the police drew weapons, used handcuffs and placed that defendant in a police cruiser. The Sixth Circuit held this was not equivalent to an arrest. The Court held the drawing of guns, and the placing of that defendant, handcuffed, in a police car was reasonable and not equivalent to an arrest where the stopped car had lurched forward as though attempting to escape; handcuffs were reasonable as a concern for officers' safety since there was reason to believe weapons might be present; and placement in a police cruiser was necessary to control the environment and secure the scene in order to use a drug detection dog and the defendant was not interrogated while being detained. An officer may secure an individual when the circumstances may appear that the officer's safety is in jeopardy. The public safety exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." United States v. Talley, 275 F.3d 560, 563 (6th Cir. 2001).

    1.    <u>Reasonable Articulable Suspicion</u>

Whether there was a reasonable articulable suspicion of criminal activity is a heavily fact-sensitive question. The Supreme Court has held that reasonable suspicion is a less demanding

standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Alabama v. White, 496 U.S. 325, 330 (1990).

The Supreme Court has stated that, "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means a fair probability that contraband or evidence of a crime will be found, and the level of suspicion for a *Terry* stop is obviously less demanding than that for probable cause[.]" United States v. Sokolow, 490 U.S. 1, 7 (1989). The Court held that any evaluation of the stop must allow the police to draw common-sense conclusions about human behavior.

The Supreme Court has held that "a determination that reasonable suspicion exists. . . need not rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 122 S. Ct. 744 (2002). In this regard, the Sixth Circuit held that a District Court's determination of no reasonable suspicion was reversed where a court did not consider the totality of factors present in the case and failed to consider three additional factors. United States v. Orsolini, 300 F.3d 724 (6th Cir. 2002). As will be seen in the case at bar, there was reasonable suspicion that defendant Persa was the perpetrator of the Subway attempted robbery. Defendant Holland lied to

7

the detectives that he was alone in the apartment, and not only was obstructing justice, but placed the officers in jeopardy.

At the time the defendants were "secured," there was reasonable suspicion for a *Terry* detention, as well as reasons to secure Persa and Holland based upon the following factors:

1) The suspect of the Subway attempted robbery went into the apartment building located at the corner of West 25th and Marvin Avenue, Cleveland;

2) Information received from several of the tenants stated that the description of the Subway attempted robbery suspect fit the description of one of the occupants of Apartment # 2 of the Marvin Avenue building;

3) The officers observed fresh wet marks outside of the door to Apartment #2 shortly after the robbery, which indicated that someone had recently entered that apartment;

4) The suspect of the crime was described as a white male, tall, thin, and blue eyes;

5) Detective Borden and Sgt. Shoulders, later on the same day, were admitted to Apartment #2 by Holland, who did not match the description of the suspect. Holland is short and thin with dark eyes;

6) Holland stated to Det. Borden and Sgt. Shoulders that he was alone in the apartment. The noise coming from the bedroom indicated to the officers that there was another person in the apartment, possibly the suspect of the Subway attempted robbery, whom the witnesses had stated had his right hand in his pocket, impressing on them that he had a gun;

7)   Persa was lying on the bedroom floor with his head covered by the hood of his sweatshirt, he was lying on his hands, not moving, and unresponsive to the commands and poking from Sgt. Shoulders to come up with his hands up; and

8)   When Persa stood up he stated to Sgt. Shoulders, "You got me . . . you got me." When asked why he did not comply when asked to get up, he responded, "You know why."

All the police needed was reasonable suspicion of criminal activity, justifying an investigative detention. The above facts more than justified a reasonable officer to secure both defendants and to question them on the Subway attempted robbery. Holland was not only subject to investigative detention for lying to the police, but actually there was probable cause to arrest him for obstruction of justice. Similarly, Persa was subject to detention based on the surrounding facts of the attempted robbery, pointing to him as the robber, as well as, his behavior in the apartment. In addition, these facts provided probable cause to arrest him for the Subway attempted robbery.

   2.   Public Safety Exception

Det. Borden and Sgt. Shoulders proceeded to Apartment #2 of the Marvin Avenue building in furtherance of the investigation of the attempted robbery of the Subway restaurant. Information received from the responding officers indicated that the suspect appeared to be armed when committing the crime.

Det. Borden and Sgt. Shoulders were admitted to the apartment by Holland who did so voluntarily and without coercion. They had legal justification for entering the residence to make inquiries relating to the attempted robbery, and in doing so, to inquire whether any other individual resided or was present in the apartment since the information provided by the other

9

tenants, as well as the wet footprints leading to the door, raised a reasonable suspicion that the suspect of the attempted robbery of the Subway restaurant resided there.

Holland was not detained when the officers asked if they would be allowed into the apartment, nor was he handcuffed. When the officers asked Holland if there was anybody else in the apartment at that time, Holland repeatedly told the officers that he was home alone. This was false information, as proven by a noise coming from the bedroom.

Upon hearing a noise coming from the bedroom, the officers reasonably had a concern for their safety. In Maryland v. Buie, 494 U.S. 325, 327, the Supreme Court held that a protective sweep of a residence conducted for the safety of police officers is permissible if an officer has a "reasonable belief" based on "specific and articulable facts" together with "inferences from those facts" which reasonably warrants the officer in believing that the area to be swept harbors an individual or individuals "posing a danger to the officer or others."

In *Terry,* the Court recognized the immediate interest of the police officer in taking steps to assure himself that the person with whom he was dealing was not armed with a weapon that could unexpectedly and fatally be used against him. The Court recognized it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. The Court recognized American criminals have a long tradition of armed violence, and every year in this country, many law enforcement officers are killed in the line of duty and thousands more are wounded. The Court recognized virtually all of these deaths and a substantial portion of the injuries are inflicted with weapons.

The *Terry* Court indicated they would not blind themselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations

where they may lack probable cause for an arrest. The *Terry* Court said when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to . . . neutralize the threat of physical harm. 392 U.S. at 23-24.

In United States v. Jacob, 377 F.3d 573 (6th Cir. 2004), the Sixth Circuit affirmed this Court's denial of the motion to suppress. The Sixth Circuit in examining whether an investigatory stop ripened into an unlawful arrest based on the manner in which the officer's detained the suspects, the court stated:

> "When establishing that a detention, which was not supported by probable cause, was reasonable, the government must demonstrate that ... 'the detention and investigative methods used were reasonable under the circumstances.'" (Citations omitted) . . . "Moreover, the degree of force utilized by officers during a detention must be 'reasonably related in the scope of the situation at hand.'"

Id., at 578.

The Court in Jacob further stated:

> . . . The issue is, therefore, whether the investigators' conduct in detaining the defendants and in pursuing a means of investigation was likely to confirm or dispel their suspicions quickly was reasonable under the circumstances. (Citing United States v. Sharpe, 470 U.S. 675, 686 (1985).

Id., at 579.

The inquiry on a police officer's use of force or restrain for unlawful or unconstitutional use of force is an objective one based upon the "information possessed" by the police officer involved. See United States v. Baeppler, 215 F.3d 594 (6th Cir. 2000) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987). The officer's subjective beliefs are irrelevant. An

application of the factors enumerated above reveal that a reasonable police officer would have acted in conformance with the conduct of Det. Borden and Sgt. Shoulders, that is, restraining the individuals while conducting their investigation.

      B.      <u>Voluntariness of Statements and Physical Evidence</u>

Persa made a statement to Det. Borden and Sgt. Shoulders of the Cleveland Police Department on January 13, 2011 confessing to the attempted robbery of the Subway restaurant. He also admitted to commission of several bank robberies and attempting to rob others. Holland made self-serving statements, stating that he was not involved in any of the robberies. Both defendants seek suppression of the statements and physical evidence seized, claiming that they were arrested illegally.

On January 14, 2011, Persa and Holland made statements to an FBI agent and two deputized federal agents, members of the Cleveland/Cuyahoga Violent Crimes Task Force. On the second instance, the agents questioned Persa and Holland exclusively on the bank robberies. On both instances, Persa and Holland were advised of their constitutional rights as required under <u>Miranda v. Arizona</u>, both Persa and Holland stated that they understood and voluntarily waived these rights. Persa and Holland seek the suppression of these statements, arguing that the statements were obtained due to their illegal arrest. Further, that evidence seized were a product of the illegal arrest.

      1.      <u>Statements Made to Cleveland Officers</u>

The government concedes that both Persa and Holland were handcuffed while at their apartment. However, the use of handcuffs does not establish that their statements were coerced. <u>United States v. Robinson</u>, 20 F.3d 320, 322-23 (8th Cir. 1994); <u>Shriner v. Wainwright</u>, 715 F.2d

1452, 1456 (11th Cir. 1983); United States v. Seni, 662 F.2d 277, 281 (4th Cir. 1981) (citations omitted) ("Neither a drawn gun, nor handcuffs, establish involuntariness in and of themselves").

The Sixth Circuit in United States v. Hopson, 134 Fed. Appx. 781, 2004 WL 1147257 (6th Cir. 2004), affirmed the district court's finding that mere fact that the defendant was handcuffed during the execution of a search warrant was no evidence of coercion. The court further found that Hopson's *Miranda* waiver was voluntary, even though the court found that he was in custody. See United States v. Stokes, 631 F.3d 802 (6th Cir. 2011) (use of handcuff did not support a finding the defendant's will was overborne).

It is anticipated that testimony at the hearing will establish that both Persa was given his *Miranda* rights and voluntarily waived those rights in this case, as noted above. Similarly, Holland obstructed justice during routine questions by lying about Persa being in the apartment, even though later he was given his *Miranda* rights and he voluntarily waived those rights. But, noted above, Holland did not make any incriminating statements in relation to any of the robberies.

    2.  Statements Made to Federal Agents

On January 14, 2011, Persa and Holland were not in federal custody when questioned by an FBI agent and two deputized federal agents. Both Persa and Holland were advised of their constitutional rights, they were provided with a waiver form, both stated they understood their rights, voluntarily waived those rights, and signed the waiver forms. There was no coercion from the agents and the questions were limited to the bank robberies, not to the Subway attempted robbery. Both defendants confessed to the bank robberies charged in the indictment. These were

voluntary waivers, as noted above, and any statements made to the federal agents are not excludable.

        Respectfully submitted,

        STEVEN M. DETTELBACH
        United States Attorney

By:    s/ Blas E. Serrano
        Blas E. Serrano (Reg. No. 0009879)
        Assistant U.S. Attorney
        400 United States Courthouse
        801 West Superior Avenue
        Cleveland, Ohio  44113
        Telephone No.:  (216) 622-3873
        Facsimile No.:   (216) 522-8355
        E-Mail: Blas.Serrano@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April, 2011, a copy of the foregoing Government's Response to Defendants Richard Michael Persa and Matthew J. Holland's Motion to Suppress was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                    s/ Blas E. Serrano
                                                    Blas E. Serrano
                                                    Assistant U.S. Attorney